JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant Stacy Whitaker ("appellant") appeals from the judgment of the trial court finding her guilty of eleven counts of aggravated arson and sentencing her to six years imprisonment for each count, to be served concurrently. For the reasons set forth below, we affirm.
 {¶ 2} On April 28, 2003, the apartment building at 1456 W. 85th Street was set on fire. The fire spread to a nearby house which sustained damage. Appellant was a former tenant of the building, but was asked to leave for failing to pay her rent and utilities. She was evicted from the building and spoke to several other tenants on different occasions regarding her feelings of ill will toward the owner. On two or more occasions, appellant was heard announcing that she planned to "burn this bitch down" in reference to the apartment building.
 {¶ 3} Arson investigators determined the fire was set intentionally in the apartment from which appellant had recently moved, but had been storing furniture and other belongings in. An eyewitness spotted appellant at the apartment building with a friend just minutes before the fire erupted. When they arrived at the scene, investigators estimated the fire had been burning for approximately 10-30 minutes. Investigators found articles of clothing and a foam cushion in appellant's old closet, which they believed were used as accelerants.
 {¶ 4} Appellant's friend who accompanied her to the apartment building on the morning of the fire testified at trial and his testimony somewhat conflicted with appellant's. He also stated that he was reluctant to testify, because he had received several threats by and letters from appellant and her family members seeking to change his testimony.
 {¶ 5} At trial, appellant testified that she had been at the apartment building on the morning of the fire, but left with her friend after picking up miscellaneous items. She denied any participation in the arson. Over the course of the investigation, she was interrogated by detectives and on four occasions gave different information and alibis to police.
 {¶ 6} Appellant was eventually indicted in May of 2003 on twelve counts of aggravated arson. She plead not guilty to all counts of the indictment and the matter proceeded to a bench trial. The trial court found appellant guilty of eleven counts of arson and thereafter sentenced her. It is from these rulings that appellant now appeals, asserting four assignments of error for our review. "I. The appellant was denied her right to a public trial under the Sixth and Fourteenth Amendments of the U.S. Constitution when the trial was moved out of the courtroom and into a jury deliberation room in order to avoid a spectator."
 {¶ 7} Within this assignment of error, appellant complains the trial court deprived her of her constitutional right to a public trial by hearing a portion of a witness' testimony in chambers.
 {¶ 8} The right to a public trial is set forth in theSixth Amendment of the Constitution of the United States and applies to the states through the Fourteenth Amendment. In re Oliver
(1984), 333 U.S. 257, 273. Likewise, Section 10, Article I of the Ohio Constitution guarantees an accused a public trial.
 {¶ 9} As explained in Oliver, supra, 333 U.S. at 268-270, this "guarantee has always been recognized as a safeguard against any attempt to employ our courts as instruments of persecution. The knowledge that every criminal trial is subject to contemporaneous review in the forum of public opinion is an effective restraint on possible abuse of judicial power." AccordUnited States v. Cojab (C.A.2, 1993), 996 F.2d 1404, 1407, wherein the court observed:
 {¶ 10} "Criminal proceedings conducted in secret have had from time immemorial an odious tinge that carries with it a scent of grave injustice reminiscent of the Spanish Inquisition and the English Star Chamber. In marked contrast to the openness in which the common law jury functioned, the Lords of the Star Chamber proceeded as inquisitors. A defendant's trial was based on charges made by persons whose identities were not disclosed, and he could be examined under torture, with the ultimate decision left to a court sitting without a jury. See Geoffrey Radcliffeand Geoffrey Cross, The English Legal System 107-08 (5th ed. 1971); 8 John H. Wigmore, On Evidence § 2250, at 282-84 (1961). Thus, the right accorded the press and the public to be present at a criminal trial is rooted in history and derived from English common law in response to the Star Chamber."
 {¶ 11} Nonetheless, the right to a public trial is not absolute and an order barring spectators from observing a portion of an otherwise public trial does not necessarily introduce error of constitutional dimension. See, e.g., Brown v. Kuhlmann
(C.A.2, 1998), 142 F.3d 529; Douglas v. Wainwright (C.A.11, 1984), 739 F.2d 531, cert. denied, 469 U.S. 1208. See, also,Press-Enterprise Co. v. Superior Court of California (1984),464 U.S. 501, 509, ("Closed proceedings, although not absolutely precluded, must be rare and only for cause shown that outweighs the value of openness").
 {¶ 12} On appeal from such order, the reviewing court is to determine whether the lower court abused its discretion. UnitedStates v. Rios Ruiz (C.A.1, 1978), 579 F.2d 670, 674; UnitedStates v. De Los Santos (C.A.5, 1987), 810 F.2d 1326, 1332;United States v. Eisner (C.A.6, 1976), 533 F.2d 987, 994 (en banc); United States v. Lucas (C.A.8, 1991), 932 F.2d 1210,1216-1217 cert. denied, 502 U.S. 949; United States v.Hernandez (C.A.9, 1979), 608 F.2d 741. See, also, State v.Cockshutt (1989), 59 Ohio App.3d 87, 89, (trial judge has discretion to issue reasonable orders excluding spectators in order to prevent intimidation of a witness).
 {¶ 13} Failure to object to closing of the courtroom constitutes a waiver of the right to a public trial. Peretz v.United States (1991), 501 U.S. 923, citing Levine v.United States, 362 U.S. 610, 619.
 {¶ 14} In this case, the defense began questioning Detective McCarthy upon re-cross examination. The state objected and the trial court conducted a sidebar. The state explained that the defense's line of questioning was likely going to compromise the ongoing federal investigation of the property manager's involvement in a "house-flipping" scheme. Both the state and the defense presented their concerns to the trial judge at sidebar. The trial judge instructed counsel that she intended to hear the last portion of McCarthy's testimony in her chambers, with the defendant present. The defense agreed this was a reasonable manner in which to hear the testimony it wished to elicit from McCarthy. The defense not only failed to object to the closing of the courtroom, but agreed to it, therefore waiving the right to public trial.
 {¶ 15} Furthermore, assuming arguendo, that appellant properly preserved for appeal her right to a public trial, we find the trial court satisfied the standards as set forth inWaller v. Georgia (1984), 467 U.S. 39, 48. There, the Supreme Court of the United States formulated the standards for courtroom closure into a four-part test:
 {¶ 16} "[1] the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced,
 {¶ 17} "[2] the closure must be no broader than necessary to protect that interest,
 {¶ 18} "[3] the trial court must consider reasonable alternatives to closing the proceeding, and
 {¶ 19} "[4] it must make findings adequate to support the closure."
 {¶ 20} In this case, the state advanced its overriding interest in not compromising the ongoing investigation of another individual, whose father was a spectator at appellant's trial. The court recognized the state's interest in preserving the investigation and limited the closed portion of testimony to the detective who may have revealed details of the ongoing investigation. The trial judge engaged in a lengthy colloquy with the prosecution and the defense to determine how best to handle the situation, and found the state's overriding interest in preserving the integrity of the investigation dictated that the defense conduct a limited re-cross examination in her chambers. Finding no merit to appellant's first assignment of error, we overrule it.
 {¶ 21} "II. The trial court did not comply with R.C. 2929.11
(B), State v. Comer, 99 Ohio St.3d 463 and State v. Lyons,
2002-Ohio-3424 when it sentenced appellant to six years in prison."
 {¶ 22} Appellant avers the trial court erred in sentencing her in failing to conduct a proportionality and consistency analysis as required by R.C. 2929.11 (B). We disagree.
 {¶ 23} In State v. Hunt, Cuyahoga App. No. 2003-Ohio-175, this court held that "R.C. 2929.11(B) does not require the trial court to engage in an analysis on the record to determine whether defendants who have committed similar crimes have received similar punishments." Rather, the statute indicates the trial court's comments made at the hearing should reflect the court considered that aspect of the statutory purpose in fashioning the appropriate sentence." State v. Edmonson (1999),86 Ohio St.3d 324 at 326-327; State v. Hunt, supra.
 {¶ 24} In this matter, the trial court clearly considered the statutory purposes of protecting the public from future crime by the offender and others and punishing the offender, and absolutely nothing has been offered from which this court may conclude that the sentence is disproportionate to the sentences imposed in similar matters. Instead, appellant argues in her assignment of error, in essence, that her terms of incarceration are too lengthy, citing the range of penalties available to the court included community controlled sanctions or a prison sentence of between three years and ten years incarceration on each count. In her brief, she argues that she had never previously been to prison, had a psychiatric history, and no one was injured as a result of the fire.
 {¶ 25} In this case, the trial court engaged in a very lengthy and thorough statutory analysis when imposing this sentence upon appellant. The trial judge noted the presumption of incarceration in cases of felonies of the first degree and found no reason to not follow such presumption. The court considered imposing minimum concurrent sentences, but found that such a sentence would demean the seriousness of the crime and would not protect society. The trial judge considered appellant's criminal history and seriousness and recidivism factors. She chose not to impose maximum and consecutive sentences after finding that appellant had not committed the worst form of the offense. We disagree with appellant's assertion that her sentence was contrary to law and therefore overrule this assignment of error.
 {¶ 26} "III. Counsel was ineffective under the Sixth andFourteenth Amendments of the U.S. Constitution."
 {¶ 27} In her third assignment of error, appellant contends her trial counsel was ineffective for failing to object to the "secret" portion of the trial and for failing to object to her improper sentence. She maintains that her trial counsel's failure to object to her alleged violation of a right to a public trial has resulted in a more stringent standard of review on appeal.
 {¶ 28} In order to demonstrate ineffective assistance of counsel, the defendant must show, first, that counsel's performance was deficient and, second, that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial. See Strickland v. Washington (1984),466 U.S. 668, 687; State v. Noling, 98 Ohio St.3d 44, 65,2002-Ohio-7044; State v. Bradley (1989), 42 Ohio St.3d 136. Counsel's performance may be found to be deficient if counsel "made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment."Strickland v. Washington, supra, 466 U.S. at 687. To establish prejudice, "the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." Id.,466 U.S. at 687.
 {¶ 29} In this case, appellant has failed to demonstrate or even allege that were it not for counsel's alleged errors, a reasonable probability exists that the result of the trial would have been different. Furthermore, we have rejected the claims of error which are the basis for appellant's claim that his trial counsel was ineffective and likewise reject the assertion of ineffective assistance of counsel which is premised upon those alleged errors. State v. Henderson (1988), 39 Ohio St.3d 24,33. We overrule this assignment of error.
 {¶ 30} "IV. The trial court's failure to rule on appellant's pro se motions violated Crim.R. 12(F) and the due process clause of the U.S. Constitution."
 {¶ 31} In her final assignment of error, appellant contends the trial court violated Crim.R. 12(F) when it failed to rule on various pro se motions. She maintains it is error for a trial court not to rule on pre-trial motions prior to trial, relying onState v. Tolbert (1990), 70 Ohio App.3d 372.
 {¶ 32} In this case, appellant filed her motions after the conclusion of her trial.[1] Therefore, her reliance on Crim.R. 12(F) and State v. Tolbert, supra, which deal with pre-trial motions is misplaced. Further, it is well-settled that when a motion is not ruled on, it is deemed to be denied. SeeNewman v. Al Castrucci Ford Sales, Inc. (1988),54 Ohio App.3d 166, 169; Solon v. Solon Baptist Temple, Inc. (1982),8 Ohio App.3d 347. Appellant fails to allege or demonstrate the denial of any particular motion which she filed post-trial was in error. Finding no merit to this assignment of error, we overrule it.
 {¶ 33} Judgment affirmed.
 {¶ 34} It is ordered that appellee recover of appellant its costs herein taxed.
 {¶ 35} The Court finds there were reasonable grounds for this appeal.
 {¶ 36} It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Sweeney, J., and Cooney, J., concur.
[1] The record indicates that appellant filed two pro se pre-trial motions. On September 10, 2003, she filed a motion for a bill of particulars and a request for discovery from the prosecuting attorney, to which she complains the state never responded. However, the record indicates that the state had already filed a bill of particulars on June 10, 2003.