OPINION
{¶ 1} Defendant-appellant, Erik D. Bragg, appeals from a judgment of the Franklin County Court of Common Pleas convicting him of the following offenses: inducing panic, with a firearm specification, in violation of R.C. 2917.31, carrying a concealed weapon, in violation of R.C. 2923.12, and tampering with evidence, in violation of R.C. 2921.12. For the following reasons, we affirm the judgment of the trial court.
 {¶ 2} This case arises from shootings that occurred on June 14, 2003, at the "Juneteenth Festival" at Franklin Park, in Franklin County, Ohio. At that festival, Nikita Banks and De-Andre Callender were struck by gunfire. Shortly after the shootings, the Columbus police arrested defendant at a nearby apartment complex.
 {¶ 3} On June 24, 2003, defendant was indicted by the Franklin County Grand Jury on two counts of felonious assault, with specifications (counts one and two); one count of inducing panic, with specifications (count three); one count of carrying a concealed weapon (count four); one count of tampering with evidence (count five); one count of having a weapon while under disability (count six); and one count of participating in a criminal gang, with specifications (count seven).
 {¶ 4} Before the start of trial, count seven of the indictment was dismissed. Additionally, as to count six, defendant waived his rights to a trial by a jury and elected to be tried by the judge of the trial court. As to the remaining counts, a jury trial commenced on October 19, 2004. As pertinent to this appeal, the following evidence was adduced at trial.
 {¶ 5} On June 14, 2003, the Juneteenth Festival was being held at Franklin Park, in Franklin County, Ohio. Nikita Banks attended the festival with her two nieces, her boyfriend's brother, De-Andre Callender, and her best friend. At around 7:30 p.m., Ms. Banks was in the park's amphitheater to watch a talent show, when she heard gunshots. Ms. Banks testified that she heard multiple gunshots, some of which were louder than others. At first, Ms. Banks thought that she had been kicked, but she soon realized that she had been shot. A bullet had passed through Ms. Banks' left buttock. According to Ms. Banks, she saw fire coming from a black gun. At trial, Ms. Banks identified defendant as the person who fired that gun. De-Andre Callender was also struck by a bullet that day. A bullet hit one of his legs. Mr. Callender testified that he did not see anyone shoot him or Ms. Banks.
 {¶ 6} Damon Minter attended the festival with his girlfriend and their children. Mr. Minter heard gunshots when they were entering the festival area. Mr. Minter testified that he saw a young man running in his direction and down a hill at the park. The individual was placing a gun in his pocket as he ran. At trial, Mr. Minter identified defendant as the person with the gun. Mr. Minter followed defendant after he ran past him. He followed him to an apartment complex located near the park. After watching defendant for about 10 or 15 seconds at that location, he proceeded back to the scene of the shootings and alerted the police as to where a gunman was located. Accompanied by two police officers, Mr. Minter went back to the apartment complex and identified defendant as a gunman.
 {¶ 7} Officer Duane Hicks of the Columbus Police Department was working special duty at the festival at the time of the shootings. Officer Hicks was one of the officers that accompanied Mr. Minter to the apartment complex. After Mr. Minter identified the suspect, the police arrested defendant. No weapon was found on defendant's person at the time of his arrest.
 {¶ 8} Defendant's arrest occurred near Roger Carpenter's apartment. Apparently after hearing commotion outside, Mr. Carpenter exited his apartment. Initially, the police handcuffed Mr. Carpenter in addition to defendant. Within a few minutes, the police released Mr. Carpenter. After the police left, Mr. Carpenter found a gun on the doorstep to the apartment adjacent to his own. He took the weapon into his apartment. Regarding the location of the gun when he discovered it, Mr. Carpenter's testimony indicated that the gun would have been more readily visible when a person was going up the stairs than when that person was going down the stairs.
 {¶ 9} A few days after the day of the shootings, the police arrived at Mr. Carpenter's apartment seeking the gun, and he turned the gun over to the police. Testing was performed on the weapon to determine whether shell casings, which were found at the scene, had been fired from the weapon recovered from Mr. Carpenter. Mark Hardy, an expert in the area of ballistics and casing identification, opined that three of the shell casings found at the scene of the shootings had been fired by the weapon recovered from Mr. Carpenter.
 {¶ 10} At trial, one witness was held in contempt of court. The first time the witness was called to testify he was found in contempt of court for his failure to answer properly directed questions, and he was taken into custody. On the next day of trial, the trial court indicated that it had been advised that "the reason the witness did not answer or refused to testify was because he was afraid." (Tr. 524.) The trial court stated on the record that it had asked the attorneys for both parties to interview the witness as to that issue. The attorneys acknowledged that the interview had occurred, as requested. The trial court asked whether the witness had expressed safety concerns. The prosecutor answered affirmatively, and explained as follows: "First of all, he requested people in the courtroom be removed and then he would feel comfortable testifying. He was concerned that they would have an opportunity to go report to the public what he had testified to and that he was worried about his safety[.]" (Tr. 524-525.) The trial court asked defense counsel whether the prosecutor's representation was accurate. In response, defense counsel stated that the "only fact that I would disagree with" was the representation that the witness made a request for the courtroom to be cleared. (Tr. 525.)
 {¶ 11} Although defense counsel acknowledged that the witness indicated that he would be more comfortable in a cleared courtroom, he objected to the closing of the proceedings from the public. Additionally, he argued that the trial court should not close the courtroom on the basis of what deputies told the court. The trial court assured defense counsel that he was closing the courtroom on the basis of the attorneys' joint interview with the witness, not on the basis of what any deputy had conveyed. Over defendant's objection, the trial court had spectators removed from the courtroom for that witness's testimony. After the trial court closed the courtroom to the public for that witness's testimony, the witness proceeded to testify. His testimony included an acknowledgment that he had told a detective in a videotaped interview that he had seen defendant point a gun at the festival.
 {¶ 12} On November 1, 2004, the jury reached verdicts as to counts three, four, and five. The jury found defendant guilty of the following: inducing panic, with specification, in violation of R.C. 2917.31, a felony of the fourth degree (count three); carrying a concealed weapon, in violation of R.C. 2923.12, a misdemeanor of the first degree (count four); and tampering with evidence, in violation of R.C. 2921.12, a felony of the third degree (count five). The jury was unable to reach a verdict as to counts one and two, the felonious assault counts. The trial court found defendant guilty of having a weapon while under disability, in violation of R.C. 2923.13, a felony of the fifth degree (count six).
 {¶ 13} Defendant was sentenced to 11 months in prison as to count three, with an additional three consecutive years of prison for the use of a firearm as to that count, and one year in prison as to count five, to be served consecutive to each other and consecutive to case No. 03CR-84. As to count four, the trial court imposed a sentence of 180 days in the Franklin County Corrections Center, with the balance of incarceration as to that count suspended for time served. By agreement of the parties, the trial court dismissed counts one, two and six. The trial court determined that defendant had 558 days of jail credit. The trial court entered judgment on December 29, 2004. Defendant did not file a timely appeal. However, this court granted defendant's motion for leave to file a delayed appeal.
 {¶ 14} In his appeal to this court, defendant has set forth the following three assignments of error:
ASSIGNMENT OF ERROR I
There was insufficient evidence to support Appellant's conviction for tampering with evidence and said conviction was against the manifest weight of the evidence.
ASSIGNMENT OF ERROR II
Appellant's due process rights under the state and federal constitutions were violated when the court closed the trial to the public for a state's witness to testify.
ASSIGNMENT OF ERROR III
The trial court commits reversible error by permitting the state to present inadmissible hearsay evidence and/or improperly impeach its own witness, in violation of Appellant's right to a fair trial under the state and federal constitutions.
 {¶ 15} By his first assignment of error, defendant argues that his conviction for tampering with evidence was not supported by sufficient evidence and was against the manifest weight of the evidence. Defendant does not challenge his other convictions as being unsupported by the evidence or against the manifest weight of the evidence.
 {¶ 16} In determining the sufficiency of the evidence, an appellate court must "examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus. Whether the evidence is legally sufficient to sustain a verdict is a question of law, not fact. State v. Thompkins (1997), 78 Ohio St.3d 380, 386.
 {¶ 17} Determinations of credibility and weight of the testimony remain within the province of the trier of fact. Statev. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. When assessing whether a conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and ultimately determine "`whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" Thompkins, at 387, quotingState v. Martin (1983), 20 Ohio App.3d 172, 175. Furthermore, "`[t]he discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" Id.
 {¶ 18} Defendant challenges the sufficiency of the evidence for his conviction for tampering with evidence. R.C. 2921.12
provides, in pertinent part, as follows:
(A) No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following:
(1) Alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation;
* * *
(B) Whoever violates this section is guilty of tampering with evidence, a felony of the third degree.
 {¶ 19} Defendant argues that there was no evidence that the weapon discovered at the apartment complex had been in his possession. To the contrary, we find that it was reasonable to conclude that the weapon found by Mr. Carpenter had been fired by defendant at the festival. Evidence was presented at trial indicating that defendant fired a weapon at the festival, and that he fled the scene carrying a firearm. Ms. Banks testified that she saw fire from a gun in defendant's possession, and Mr. Minter testified that he saw defendant running from the scene with a gun in his possession. Additionally, the testimony revealed that Mr. Minter followed defendant to the apartment complex where defendant was subsequently arrested, and where Mr. Carpenter found the weapon, which had been fired at the festival. Not only did that evidence support a finding that defendant fired the weapon discovered by Mr. Carpenter, that evidence demonstrated that defendant certainly knew, after the shooting, that an official proceeding or investigation was about to be or likely to be instituted. Therefore, the issue becomes whether there was sufficient evidence admitted at trial to establish R.C.2921.12(A)(1).
 {¶ 20} Defendant asserts that the gun was found "out in the open" on a doorstep in close proximity to where defendant was arrested, and, therefore, the requirement of R.C. 2921.12 that a person conceal or remove a thing to impair its availability as evidence was not demonstrated. Despite searching for a weapon around the apartment complex, the police did not discover the weapon; it was found by a resident of the apartment complex after the police left. Furthermore, there was testimony at trial indicating that the weapon was more readily discernable when proceeding in a particular direction on the stairs, and that the weapon was found laying on a doorstep to an apartment near the location of defendant's arrest. Nonetheless, we find that the degree of visibility of the weapon upon its discovery was not necessarily determinative of whether defendant tampered with evidence. See State v. Jones, Franklin App. No. 02AP-1390,2003-Ohio-5994, at ¶ 35 (finding sufficient evidence to support a tampering with evidence conviction when the evidence indicated that the defendant had driven the getaway vehicle after a shooting and parked it in an alley behind an apartment complex).
 {¶ 21} Here, defendant fled the scene of the shootings with a gun in his possession, and he stopped at an apartment complex away from Franklin Park. Defendant was subsequently arrested at that apartment complex, outside Mr. Carpenter's apartment. No weapon was found on his person. A weapon, which was later determined to have been fired at the festival, was discovered on the doorstep to the apartment adjacent to Mr. Carpenter's apartment, after the police left the location of the arrest. It is possible that defendant accidentally dropped the weapon at the apartment complex immediately after fleeing the scene of the shootings. It is also reasonable to conclude that he placed or tossed the gun on the apartment doorstep away from his person and away from the scene of the shootings.
 {¶ 22} When the evidence in this case is viewed in a light most favorable to the prosecution, we find that defendant's conviction for tampering with evidence was supported by sufficient evidence. We further find that the conviction was not against the manifest weight of the evidence. This is not an "exceptional case in which the evidence weighs heavily against the conviction." Accordingly, we overrule defendant's first assignment of error.
 {¶ 23} Defendant's second assignment of error alleges that his constitutional due process rights were violated when the court excluded the public for one witness's testimony. Defendant argues that the clearing of the courtroom reasonably would lead to an "unfairly prejudicial inference" that some action of his led to the intimidation of the witness. (Defendant's brief, at 10.) In that regard, defendant notes that the witness had already testified in an open courtroom.
 {¶ 24} Defendant correctly observes that the Sixth Amendment to the United States Constitution, as made applicable to the states by the Fourteenth Amendment, guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." Additionally, Section 10, Article I of the Ohio Constitution guarantees an accused the right to a public trial. However, "the right to a public trial is not absolute and an order barring spectators from observing a portion of an otherwise public trial does not necessarily introduce error of constitutional dimension." State v. Whitaker, Cuyahoga App. No. 83824, 2004-Ohio-5016, ¶ 11. A trial court's decision to remove spectators from a courtroom is reviewed under an abuse of discretion standard. State v. Brown (Nov. 25, 1998), Cuyahoga App. No. 73060.
 {¶ 25} In Waller v. Georgia (1984), 467 U.S. 39, 48, the Supreme Court of the United States set forth a four-prong test to determine the necessity of a courtroom closure: first, the party seeking to close the trial or some portion of it must advance an overriding interest that is likely to be prejudiced; second, the closure must be no broader than necessary to protect that interest; third, the trial court must consider reasonable alternatives to closing the courtroom; and fourth, the court must make findings adequate to support the closure.
 {¶ 26} Included within a trial court's powers is its "inherent power to punish disobedience of court orders as necessary for the orderly and efficient administration of justice." State v. Kimbler (1986), 31 Ohio App.3d 147, 150. Moreover, when lawfully required, a witness may not refuse to answer properly directed questions. See R.C. 2705.02(C). In this case, a witness initially refused to answer properly directed questions, despite court admonishments. Consequently, he was placed into custody for contempt of court. It became apparent that the witness's refusal to answer questions was linked to the presence of spectators. Thus, the witness's refusal to answer questions, which was caused by his concern for his safety, was obstructing the administration of justice. In response to this circumstance, the trial court closed the courtroom to the public for a limited duration so as to alleviate the safety concern. Based on the foregoing, we find that the first and secondWaller prongs were satisfied in this case.
 {¶ 27} As to the third prong, it has been stated that "the trial court is not required to consider alternatives unless the party opposing the closure so urges; this duty does not arisesua sponte." Brown, supra, citing Alaya v. Speckard (C.A.2, 1997), 131 F.3d 62 (en banc). Here, defendant's counsel voiced opposition to the closure but did not suggest any possible alternative to closing the courtroom to the public for that one witness's testimony.
 {¶ 28} Regarding the fourth prong, it is clear from the record that the trial court considered the fact that the witness had resolutely refused to answer properly directed questions because of safety concerns. The trial court accordingly decided to close the courtroom solely for that witness's testimony. We find that the trial court judge sufficiently provided his reasoning for closing the courtroom to the public only for that one witness's testimony.
 {¶ 29} Upon our application of the Waller prongs to the circumstances of this case, we can only conclude that the trial court did not abuse its discretion by closing the courtroom to the public only for the testimony of a witness who had previously refused to answer properly directed questions due to safety concerns. Therefore, we do not find the trial court's actions to be in violation of defendant's constitutional right to a public trial. Based on the foregoing, we overrule defendant's second assignment of error.
 {¶ 30} In his third assignment of error, defendant argues that the trial court erred in permitting the state to present certain testimony of the witness who testified in a closed courtroom. That witness testified regarding statements he made to the police during a videotaped interview, including a statement that, at the scene of the shootings, he saw defendant point a gun. Defendant seems to argue that the witness's statements to the police were inadmissible hearsay, and that it was improper for the state to attempt to impeach its own witness. The state argues that defendant failed to properly object to the error alleged in this appeal, and he has failed to demonstrate plain error. We find that defendant's counsel did not object to the witness's testimony on the basis that it was inadmissible hearsay or that the state was improperly attempting to impeach its own witness. Therefore, we conclude that defendant has waived all but plain error in regard to his third assignment of error.
 {¶ 31} Even assuming the contested testimony of that witness was admitted in error, defendant has not demonstrated that it was plain error. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court. Crim.R. 52(B). Under this rule, a reviewing court must find three things in order to correct an error that was not properly objected to at trial. First, there must be an error. Second, the error must be an obvious defect in the trial proceedings. Third, the error must have affected substantial rights; that is, the trial court's error must have affected the outcome of the trial. State v. Barnes (2002), 94 Ohio St.3d 21,27. Stated differently, the defendant must show that "but for the error, the outcome of the trial clearly would have been otherwise." State v. Long (1978), 53 Ohio St.2d 91, 97. Additionally, the Supreme Court of Ohio has stated, "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." Id. at paragraph three of the syllabus.
 {¶ 32} This is not a case that necessitates the application of the plain error doctrine. Ms. Banks' testimony indicated that, at the festival, defendant fired a gun, that the festival was attended by hundreds of people, and that she was struck by a bullet. Mr. Minter testified that defendant was placing a gun in his pocket as he was fleeing the scene of the shootings. In addition, expert testimony at trial revealed that three of the shell casings discovered at the festival were from the gun found near the location of defendant's arrest. Considering that evidence, we cannot find that the result of the proceedings clearly would have been different if the testimony contested under defendant's third assignment of error had been excluded. Therefore, we overrule defendant's third assignment of error.
 {¶ 33} Having overruled all three of defendant's assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
Klatt, P.J., and Bryant, J., concur.