[Cite as *State v. Brunson*, 2020-Ohio-5078.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,              :

                                              No. 107683

    v.                                      :

NIGEL J. BRUNSON,                       :

    Defendant-Appellant.             :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** October 29, 2020

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-17-616120-C

---

*Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Daniel Cleary, Brian Kraft, Ryan Bokoch, and Katherine E. Mullin, Assistant Prosecuting Attorneys, *for appellee.*

Mark A. Stanton, Cuyahoga County Public Defender, and Aaron T. Baker, Assistant Public Defender, *for appellant.*

RAYMOND C. HEADEN, J.:

{¶ 1} Defendant-appellant Nigel J. Brunson ("Brunson") appeals from his convictions and sentence for aggravated murder, aggravated robbery, kidnapping,

aggravated burglary, felonious assault, and murder. For the reasons that follow, we affirm.

**Procedural and Substantive History**

{¶ 2} On April 25, 2017, the Cuyahoga County Grand Jury indicted Brunson on one count of aggravated murder in violation of R.C. 2903.01(A), three counts of aggravated murder in violation of R.C. 2903.01(B), six counts of aggravated robbery in violation of R.C. 2911.01(A)(1), one count of aggravated robbery in violation of R.C. 2911.01(A)(3), one count of kidnapping in violation of R.C. 2905.01(A)(3), six counts of kidnapping in violation of R.C. 2905.01(A)(2), one count of aggravated burglary in violation of R.C. 2911.11(A)(1), one count of aggravated burglary in violation of R.C. 2911.11(A)(2), one count of felonious assault in violation of R.C. 2903.11(A)(1), five counts of felonious assault in violation of R.C. 2903.11(A)(2), one count of murder in violation of R.C. 2903.02(B), and one count of having weapons while under disability in violation of R.C. 2923.13(A)(2). With the exception of the having weapons while under disability count, all counts carried one- and three-year firearm specifications.

{¶ 3} Brunson was charged together with Dana Thomas ("Thomas"), Dwayne Sims ("Sims"), Anita Hollins ("Hollins"), and Garry Lake ("Lake") in connection with the October 24, 2016 killing of Cooley Lounge bartender Melissa Brinker ("Brinker") and the related robbery of patrons at the bar. Lake ultimately entered into a plea agreement with the state of Ohio and testified as a witness for the state at trial.

{¶ 4} On June 8, 2018, Brunson filed a motion for severance of his trial from that of his codefendants pursuant to Crim.R. 14. On June 12, 2018, the court denied this motion, and Brunson, Sims, and Hollins proceeded to a joint jury trial. Thomas waived his right to a jury trial and proceeded to a simultaneous bench trial.

{¶ 5} Shortly before trial began, and following Lake's testimony at a hearing on a motion to suppress filed by Sims, Hollins moved to introduce recorded statements made by Lake in a conversation with his attorney and investigator. These statements were made during a break in Lake's meeting with police, and unbeknownst to Lake and his attorney, the statements were recorded.

{¶ 6} Counsel for Hollins and Brunson argued that the recorded statements should be made available for use during their cross-examination of Lake at trial. They argued that the statements were exculpatory and were admissible under the crime-fraud exception to the attorney-client privilege. In response, the state argued that the statements were privileged and, further, the content of the recorded statements did not show evidence of a crime or fraud. The court independently reviewed the recording, as well as suppression-hearing testimony of Lake, his trial counsel, and Cleveland Police Detective Kathleen Carlin ("Detective Carlin"), and ruled that the statements were privileged and could not be used during Lake's cross-examination at trial.

{¶ 7} Midway through trial, Sims entered into a plea agreement wherein he pleaded guilty to two counts of aggravated robbery and one three-year firearm specification. The trial court subsequently sentenced Sims to 14 years in prison.

{¶ 8} The following summary of the facts underlying this case was set forth in this court's recent decision in Hollins's appeal, *State v. Hollins*, 8th Dist. Cuyahoga No. 107642, 2020-Ohio-4290:

> The evidence presented by the state indicated that in December 2015, Hollins and her then-boyfriend, Marcus Williams ("Williams") were involved in an argument at the Cooley Lounge. As the fight escalated, Hollins was struck in the head with a beer bottle and required medical attention. Hollins accused bartender Jane Svec ("Svec") of setting up the incident, and Hollins was banned from the bar after that incident. The individuals who struck Hollins were charged with felonies. Svec testified at their trial, and the assailants were subsequently acquitted.
>
> By the fall of 2016, Hollins was dating Brunson. Brunson, Sims, and Thomas were friends, and Lake and Thomas were raised together. Approximately one week before the murder, Holly Smith ("Smith"), a friend of Hollins, received a Facebook post asking who was working at Cooley Lounge. Smith did not know who posted the question but believed it might have been Hollins. Additionally, Svec changed her work schedule shortly before this posting.
>
> On the night of October 24, 2016, Lake needed a ride home from a party. Hollins picked him up. Brunson, Thomas, Sims, and Hollins's two children were in the car. Lake testified that he fell asleep during the car ride. When he awoke, Hollins had parked the car at a playground in the area of West 132nd Street in Cleveland, in the vicinity of the Cooley Lounge. Brunson, Thomas, and Sims were no longer in the car.
>
> Meanwhile, Patrick Lorden ("Lorden"), Melissa Morton ("Morton"), James Fox ("Fox"), and Thomas Bernard ("Bernard") were patrons at the bar, and Brinker was bartending. Patron Thomas Platt, a.k.a. "Andy," was assisting Brinker by emptying the garbage and performing other tasks in exchange for free drinks. The evidence presented at trial indicated that two other individuals entered the bar, sat together, and ordered a drink. The two requested a cup to share it, and both men drank from the cup. A third man entered the bar. He later threw the cup away, the cup that the other two men drank from, placing it in a receptacle that Andy had recently emptied. The third man joined the first two men at the bar. All three men suddenly produced weapons. The men began robbing and assaulting the patrons. Morton attempted

to call the police, but one of the assailants pistol-whipped her. During the attack, Brinker was forced to the rear of the bar and shot by one of the men who requested a drink. The other man who requested a drink also went to this area and shot her.

After the gunmen fled, the patrons discovered Brinker dead in the back of the bar. The police subsequently retrieved video surveillance evidence and also retrieved the cup that the men drank from before the attack. DNA analysis of the cup established two profiles. Analysis showed that Thomas is 4.44 million times more likely than a coincidental match to an unrelated African-American, and Brunson is 130 million times more likely than a coincidental match to an unrelated African-American person. Police also linked Sims to the attack.

According to Lake, when the three men returned to Hollins's car, Thomas said that he had to shoot the bartender in the face because she saw him. Brunson laughed about having to "finish her off," and Hollins said, "that's what she get," before driving them away from the scene. Police recovered .380- and .45-caliber casings from this area. Lorden's partially burned wallet and Brinker's partially burned purse were recovered from East 80th Street in Cleveland, near the homes of Brunson, Sims, and Lake.

Cell phone records indicated that Hollins and Brunson were together at approximately 11:15 p.m., prior to the murder. Thomas's phone was also in this same area. Brunson's phone made three *67 calls to the Cooley Lounge, ostensibly to conceal the identity of the caller from the recipient of the call. By 11:38 p.m., cell phone location data shows Thomas, Brunson, and Sims near the Cooley Lounge.

After the attack, Thomas confronted Hollins and said that she told him that there were no cameras at the bar. At that point, Hollins said that she was going to sue them civilly in connection with the December 2015 incident when she was attacked.

At the close of the state's case, the state moved to dismiss three counts of felonious assault, and the court granted that motion. Brunson made a Crim.R. 29 motion for acquittal. The court denied this motion.

{¶ 9} On July 3, 2018, the jury returned a verdict of guilty on all counts except for one count of aggravated murder and one count of aggravated robbery. The court referred Brunson to the probation department for a presentence-investigation report ("PSI"). On August 23, 2018, the court sentenced Brunson to life in prison without the possibility of parole.

{¶ 10} Brunson appeals, presenting the following assignments of error verbatim for our review:

> I. The trial court violated Mr. Brunson's right to a public trial when it conducted a hearing, deciding to partially close the courtroom without testimony, factual findings, or an opportunity for Mr. Brunson to be heard, because he was not present.
>
> II. The trial court violated Mr. Brunson's right to be present, when it conducted a hearing, deciding to partially close the courtroom, outside of his presence.
>
> III. The trial court erred in denying Mr. Brunson his right to a fair trial, as well as his right to confrontation, when it ruled that his alleged co-conspirator's attorney-client privilege trumped both of these rights and would not permit his trial counsel to confront Garry Lake with *Brady* material provided by the state in discovery.
>
> IV. The trial court abused its discretion when it permitted a state's investigating officer to testify to an opinion of guilt, thus usurping the jury's factfinding duty.
>
> V. The trial court abused its discretion when it permitted the admission of hearsay statements erroneously on the basis of the exception of statements made in furtherance of a conspiracy, thus both admitting hearsay in violation of the rules of evidence and depriving Mr. Brunson of his constitutional rights under the Confrontation Clause.
>
> VI. The trial court erred in failing to sever this trial of several co-defendants into separate trials, violating Crim.R. 8 and Crim.R. 14, as well as Mr. Brunson's Sixth Amendment right of cross-examination,

and resulting in a loss of due process because Mr. Brunson did not receive a fair trial.

VII. The trial court abused its discretion when it permitted the admission of testimony that the phone and phone records of Rico Suave related to Appellant.

VIII. Trial counsel for Mr. Brunson provided ineffective assistance of counsel, as guaranteed by both the United States Constitution, and the Ohio Constitution, when he told the jury in closing argument that one of Mr. Brunson's co-defendants, who had earlier been on trial with the same jury, pled guilty in the midst of trial.

IX. Trial counsel for Mr. Brunson provided chronically ineffective assistance of counsel, as guaranteed by both the United States Constitution, throughout every phase of Mr. Brunson's trial, thus failing to be a meaningful adversary to the state's case.

X. The cumulative effect of multiple errors at trial, even if singularly not sufficient to warrant reversal, together deprived Appellant of a fair trial and denial of due process.

XI. The trial court engaged in sentencing error when it used Mr. Brunson's right to remain silent against him in making its sentencing decision of life without the possibility of parole for crimes committed at the age of 19. This sentence is contrary to law and constitutes cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution.

XII. Mr. Brunson received ineffective assistance of counsel at sentencing when his trial counsel failed to enunciate any mitigation for the trial court to consider whatsoever.

**Law and Analysis**

## I. Right to Public Trial

{¶ 11} In his first assignment of error, Brunson argues that the trial court violated his right to a public trial when it conducted a hearing, and decided to partially close the courtroom without hearing testimony, making factual findings, or

providing Brunson an opportunity to be heard because he was not present at the hearing.

{¶ 12} The partial closure Brunson refers to occurred when, midway through trial, the judge noticed that Brunson appeared agitated and seemed to be having a disagreement with his lawyer. Upon noticing this, the court engaged in a dialogue with the attorneys outside of the presence of the jury. During this dialogue, one of Brunson's attorneys was meeting with him outside of the courtroom, and his other attorney was in the courtroom.

{¶ 13} The judge stated on the record that Brunson's counsel indicated to the court that Brunson was upset because he believed that one of the courtroom deputies had posted a photograph of him on social media, and because the deputy had escorted one of his family members, Hendri Hopkins ("Hopkins"), from the courtroom. The judge then asked the deputy to explain why he had removed Hopkins from the courtroom. The deputy stated that he observed Brunson attempting to get the attention of people in the back of the courtroom and making hand signals at them. The deputy then observed that one of the individuals in the back of the courtroom, Hopkins, had taken out his cellphone and appeared to be texting. Seeing this, the deputy instructed Hopkins to exit the courtroom and told him that he could reenter the courtroom after the next break in the proceedings. The deputy also stated that Brunson had accused him of posting a photograph of him on social media. The deputy believed that Brunson was referring to a photo that

appeared on Cleveland.com, and informed him that he (the deputy) also appeared in the photograph and therefore had not taken it.

{¶ 14} During this sidebar, the court expressed concern that Hopkins was attempting to communicate with Brunson. In light of this concern, the court stated at one point, "I'm not inclined to let him back in the courtroom" and at another point "he's not permitted back in the courtroom."

{¶ 15} The court then instructed the bailiff to bring Brunson into the courtroom to discuss his concerns regarding the photograph on social media. The court asked Brunson if he was willing to waive his attorney-client privilege with respect to the conversation he had with his attorney concerning his complaint about the photograph. Brunson responded affirmatively. Brunson's attorney indicated that Brunson was concerned with both a photograph on Cleveland.com and photos he believed were taken by deputies and then posted to social media. The court informed Brunson that it could not control what photos a media outlet chose to publish online, and that there was no basis for his concern about deputies taking photographs in the courtroom. At the conclusion of this conversation, a prosecutor asked the court if people could come back into the courtroom, and it responded that they could.

{¶ 16} In his first assignment of error, Brunson argues that the removal of Hopkins from the courtroom violated his right to a public trial. The right to a public trial is a fundamental constitutional guarantee under the Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution. *State*

*v. Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.2d 1038, ¶ 49, citing *State v. Lane*, 60 Ohio St.2d 112, 119, 397 N.E.2d 1338 (1979).  A violation of this right is considered structural and is not subject to harmless-error analysis.  *Id.*, citing *Waller v. Georgia*, 467 U.S. 39, 49, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984), fn. 9.  A structural error is a "'defect affecting the framework within which the trial proceeds, rather than an error in the trial process itself.'"  *Drummond* at ¶ 50, quoting *Arizona v. Fulminante*, 499 U.S. 279, 310, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991).

{¶ 17} The right to a public trial is not absolute, however, and in some instances must yield to other interests.  *Drummond* at ¶ 51.  A trial judge has authority to exercise control over the proceedings and the discretion to impose control over the proceedings, but any closure must be narrowly drawn and applied sparingly.  *Id.*, citing *State ex rel. Repository v. Unger*, 28 Ohio St.3d 418, 421, 504 N.E.2d 37 (1986); *Lane* at 121; *State v. Clifford*, 135 Ohio App.3d 207, 213, 733 N.E.2d 621 (1st Dist.1999).  A trial court may exclude courtroom spectators whose conduct is likely to interfere with the administration of justice, and the "'decision to remove spectators from a courtroom is reviewed under an abuse of discretion standard.'"  *State v. Sowell*, 10th Dist. Franklin No. 06AP-443, 2008-Ohio-3285, ¶ 34, quoting *State v. Bragg*, 10th Dist. Franklin No. 05AP-100, 2006-Ohio-1903, ¶ 24.

{¶ 18} The United States Supreme Court has laid out a four-part test that courts must use to determine whether closure of a courtroom is necessary: (1) the

party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced; (2) the closure must be no broader than necessary to protect that interest; (3) the trial court must consider reasonable alternatives to closing the proceeding; and (4) it must make findings adequate to support the closure. *Waller* at 48.

{¶ 19} Ohio courts have consistently limited the applicability of the *Waller* factors in cases of partial closure. In *Drummond*, the Ohio Supreme Court held that "[w]hen a trial judge orders a partial, as opposed to a total, closure of a court proceeding, 'a "substantial reason" rather than *Waller*'s "overriding interest" will justify the closure.'" *Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.2d 1038, at ¶ 53, quoting *Woods v. Kuhlmann*, 977 F.2d 74, 76 (2d Cir.1992), quoting *United States v. Sherlock*, 962 F.2d 1349, 1356-1357 (9th Cir.1992). Further, this court has previously held that in certain instances of a partial closure, the *Waller* test is supplanted with the triviality standard. *State v. Lawrence*, 8th Dist. Cuyahoga Nos. 100371 and 100387, 2014-Ohio-4797, ¶ 24, citing *Sowell* at ¶ 37. Under this standard, "'[e]ven a problematic courtroom closing can be 'too trivial to amount to a violation of the [Sixth] Amendment,'" and a reviewing court will look to the actions of the trial court and analyze whether the effect that they had on the conduct of the trial deprived the defendant of his Sixth Amendment protections. *Sowell* at ¶ 43, quoting *United States v. Perry*, 479 F.3d 885, 890 (D.C.Cir.2007), and citing *Peterson v. Williams*, 85 F.3d 39, 42 (2d Cir.1996).

{¶ 20} The Tenth District's opinion in *Sowell* is particularly instructive here, because it involved "exclusion of an accused's relative from a courtroom following an assertion by a court officer that the relative had made threatening gestures toward a witness while the witness testified." *Sowell*, 10th Dist. Franklin No. 06AP-443, 2008-Ohio-3285, at ¶ 45. Although the record in this case reflects that Hopkins was gesturing towards Brunson, rather than the witness, Hopkins's exclusion was likewise based on his own misconduct. Unlike the closure involved in *Waller*, the alleged closure here did not close the courtroom to the public at large. It was narrowly limited to the one disruptive individual. Further, the purposes of a right to a public trial contemplated by *Waller*, such as ensuring that the judge and prosecutor perform their duties responsibly, discouraging perjury, or encouraging witnesses to come forward, were in no way impacted here.

{¶ 21} The "closure" complained of by Brunson is the removal of Hopkins midway through the trial. A courtroom deputy, noticing that Hopkins was using his phone and attempting to communicate with Brunson during the testimony of a witness, escorted Hopkins from the courtroom. We note that although the court ultimately stated that Hopkins would not be permitted to reenter the trial, a review of the record does not indicate whether he attempted to reenter the courtroom as instructed by the deputy. Further, the record contains no other indication that Hopkins, or any other individual, was excluded from the trial at any other point of the proceedings. Therefore, the removal of Hopkins from the courtroom was fully

within the court's discretion and did not violate Brunson's Sixth Amendment right to a public trial. Brunson's first assignment of error is overruled.

## II. Right to Be Present

{¶ 22} In his second assignment of error, Brunson argues that the court violated his right to be present when it conducted the hearing he challenges in the first assignment of error. Following Hopkins's removal from the courtroom, the court called a brief recess and had a discussion with the attorneys and the courtroom deputies. As described above, Brunson was not present for this conversation until he waived his attorney-client privilege with respect to his concerns about photographs on social media.

{¶ 23} Crim.R. 43(A) provides that except as explicitly provided in the rules, "the defendant must be physically present at every stage of the criminal proceeding and trial, including the impaneling of the jury, the return of the verdict, and the imposition of sentence." Here, Brunson's trial counsel did not object to Brunson's absence from the courtroom, thereby waiving all but plain error on appeal. *State v. Bello*, 8th Dist. Cuyahoga No. 108735, 2020-Ohio-1506, ¶ 25, citing *State v. Boynton*, 8th Dist. Cuyahoga No. 106301, 2018-Ohio-4429. Crim.R. 52(B) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." *Id.*

{¶ 24} Although the right to be present is fundamental, a defendant's absence does not necessarily result in prejudicial or constitutional error and only implicates due process to the extent that a fair and just hearing would be thwarted

by their absence.  *State v. Glasser*, 4th Dist. Athens No. 11CA11, 2012-Ohio-3265, ¶ 49, citing *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31, ¶ 90.

{¶ 25} Brunson's brief absence during a discussion about his own agitation does not amount to plain error.  Brunson was absent from the courtroom for a short time, and despite the arguments advanced in his first assignment of error, the conversation that took place in his absence did not directly implicate his right to a public trial.  Because his absence did not "thwart" a fair and just hearing, we decline to recognize plain error here.  Therefore, Brunson's second assignment of error is overruled.

### III.  Garry Lake's Attorney-Client Privilege

{¶ 26} In his third assignment of error, Brunson argues that the trial court erred in ruling that he could not cross-examine alleged coconspirator and state's witness Lake regarding his statements made to his trial attorney and his investigator that were recorded, unbeknownst to his attorney, during a break in his interview with police.  Brunson maintains that the trial court denied him his due process rights under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Further, Brunson argues that he was likewise denied his Sixth Amendment right to confront a witness against him.

{¶ 27} A trial court is vested with broad to determine the admissibility of evidence, so long as that discretion is exercised in accordance with the rules of procedure and evidence.  *State v. Thomas*, 8th Dist. Cuyahoga No. 101202, 2015-Ohio-415, ¶ 28, citing *Rigby v. Lake Cty.*, 58 Ohio St.3d 269, 271, 569 N.E.2d 1056

(1991). Therefore, we will not disturb the trial court's decision to admit or exclude evidence absent an abuse of discretion. *Id.* An abuse of discretion implies that the court's decision was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶ 28}** The Ohio Supreme Court has held that R.C. 2317.02 "evinced the sole criteria for waiving [attorney-client] privilege: (1) the client expressly consents, or (2) the client voluntarily testifies on the same subject." *State v. McDermott*, 72 Ohio St.3d 570, 572, 651 N.E.2d 985 (1995). Further, it is the contents of the communication that are privileged, not the mere fact that a communication took place. *Clapp v. Mueller Elec. Co.*, 162 Ohio App.3d 810, 2005-Ohio-4410, 835 N.E.2d 757, ¶ 55 (8th Dist.), citing *Upjohn Co. v. United States*, 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981).

**{¶ 29}** Brunson argues that because Lake voluntarily testified on the same subject during the suppression hearing, he effectively waived attorney-client privilege. Specifically, Brunson refers to the following exchange:

> PROSECUTOR: And before you had this — this interview on April 6th that we have here on the screenshot, State's 1, did you let your attorney know what you were going to tell law enforcement on that day?
>
> LAKE: I let him know what I was going to tell them?
>
> PROSECUTOR: Correct.
>
> LAKE: No.
>
> PROSECUTOR: All right. Did you ever indicate that you knew the names or identification or individuals that committed this crime on October 24, 2016?

LAKE: You said did I tell them who the names was?

PROSECUTOR: Correct.

LAKE: Yes.

{¶ 30} Lake's attorney, who was present during this testimony, did not object. At a subsequent hearing on the issue of whether Lake's recorded statements were protected by attorney-client privilege, Lake's attorney testified that he would have objected had the line of questioning touched on any particulars of the discussion that was being inadvertently recorded. Lake's attorney also testified that he understood that attorney-client privilege was intact at the time of his conversation with Lake.

{¶ 31} Our review of the record compels us to conclude that Lake's testimony at the suppression hearing was not a waiver of his attorney-client privilege. The general context of Lake's testimony was the circumstances of his photo identification of suspects. As described above, Lake stated that he did not tell his attorney what he was going to tell law enforcement. Lake then stated that he told "them" the names, but this statement lacks clarity in terms of who "them" was. The trial court reviewed both this testimony and the video of the recorded statement in question and determined that the facts were insufficient to show that Lake had waived his attorney-client privilege. We agree. Nothing in the record indicates that Lake waived his attorney-client privilege, either prior to making the statement in question or during his testimony at the suppression hearing. Although Lake did

testify as to his conversation with his attorney, the record does not clearly establish that he testified as to the contents of that communication. Therefore, the trial court did not abuse its discretion in ruling that Brunson could not cross-examine Lake as to his privileged statements. Brunson's third assignment of error is overruled.[1]

## IV. Detective Carlin's Testimony

{¶ 32} In Brunson's fourth assignment of error, he argues that the trial court abused its discretion by permitting an investigating officer to testify to an opinion of guilt and usurp the jury's fact-finding duty. Specifically, Brunson challenges an exchange from the state's direct examination of Detective Carlin. After portions of the surveillance footage of the incident were played, Detective Carlin testified that she had obtained height and weight information for each of the defendants upon their arrests. She then testified that, using those physical characteristics to review the surveillance footage of the suspects, she was able to form an opinion that suspect one was Brunson. This testimony was admitted over repeated objections by defense counsel.

{¶ 33} Brunson argues that this testimony violates Evid.R. 701 and constitutes both improper vouching of the state's case and opinion testimony of guilt, which robs the jury of its fact-finding function. Further, Brunson relies on *State v. Dzelajlija*, 8th Dist. Cuyahoga No. 88805, 2007-Ohio-4050. In *Dzelajlija*,

---

[1] We note that Hollins raised this issue in her direct appeal, arguing specifically that Lake's statement was subject to the crime-fraud exception, and we similarly found "nothing in the record from which we can conclude that [Lake's attorney-client privilege] was waived or otherwise vitiated." *Hollins*, 8th Dist. Cuyahoga No. 107642, 2020-Ohio-4290, at ¶ 57.

this court found that the prosecutor elicited improper opinion testimony from a police lieutenant where the lieutenant testified that he believed the state's main witness was being truthful. *Id.* at ¶ 33. In response, the state argues that Detective Carlin's testimony was not improper because she was not offering an opinion as to Brunson's guilt. Instead, according to the state, she testified that based on her investigation, including review of the surveillance footage, she was able to identify Brunson as a suspect.

{¶ 34} Evid.R. 701 provides:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

In general, opinion testimony of a police officer about the guilt of a defendant is inadmissible. *State v. Ruble*, 2017-Ohio-7259, 96 N.E.3d 792, ¶ 58 (4th Dist.), citing *State v. Battiste*, 8th Dist. Cuyahoga No. 102299, 2015-Ohio-3586, ¶ 35-36.

{¶ 35} We agree with Brunson that Detective Carlin's identification of "suspect one" in the surveillance footage of the incident as Brunson was improper opinion testimony. Without discounting Detective Carlin's years of experience in homicide investigations, her testimony was based on Brunson's physical characteristics, the forensic evidence, and the surveillance footage, all of which was available to the jury. Similarly, this is not a case in which opinion testimony may be admitted to identify an individual in a grainy photo or a surveillance video of poor quality, or where the witness has a much greater familiarity with the defendant that

gave them a greater appreciation of the defendant's normal appearance. *State v. Bond*, 10th Dist. Franklin No. 11AP-403, 2011-Ohio-6828. Further, while it is not erroneous for a law enforcement officer to testify that they identified the defendant as a suspect, there is a fine but critical distinction between that and what occurred here. Because there was no dispute that particular individuals in the surveillance footage were the perpetrators in this case, Detective Carlin's testimony that she had determined that one of the individuals — "suspect number one" — was Brunson.

{¶ 36} Although this testimony was improper, we conclude that its admission constitutes harmless error. Crim.R. 52(A) provides that "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." *State v. Boaston*, 160 Ohio St.3d 46, 2020-Ohio-1061, 153 N.E.3d 44, ¶ 61. "'The harmless error doctrine recognizes the principle that the central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence.'" *State v. Keith*, 8th Dist. Cuyahoga No. 69267, 1997 Ohio App. LEXIS 914, 25 (Mar. 13, 1997), quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 681, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). Courts use a three-part analysis in determining whether the erroneous admission of certain evidence constitutes harmless error under Civ.R. 52(A):

> First, it must be determined whether the defendant was prejudiced by the error, i.e., whether the error had an impact on the verdict. Second, it must be determined whether the error was not harmless beyond a reasonable doubt. Lastly, once the prejudicial evidence is excised, the remaining evidence is weighed to determine whether it establishes the defendant's guilt beyond a reasonable doubt.

(Internal citations omitted.) *Boaston* at ¶ 63.

{¶ 37} Here, while we are mindful the complained of testimony, in isolation, was prejudicial, upon a thorough review of the record we cannot conclude that the error was not harmless beyond a reasonable doubt. Further, the record reflects that the state presented overwhelming evidence of Brunson's guilt. Beyond the surveillance footage of the incident, the state introduced DNA evidence indicating that the plastic cup shared by two of the suspects contained DNA from Brunson and Thomas. The state also introduced cell phone records showing not only that a number belonging to Brunson had called the bar shortly before the shooting and asked who was working at the time, but also that Brunson's cellphone was in the area of the bar at the time of the shooting. In addition, Lake testified at trial that Brunson and the other codefendants had "robbed a bar" on the west side of Cleveland, and that Brunson said that he "finished" the victim. Both the DNA evidence and the surveillance footage are particularly compelling here because they are persuasive evidence of Brunson's identity. Therefore, we find that any error in admitting Detective Carlin's testimony was harmless. Brunson's fourth assignment of error is overruled.

## V. Hearsay Statements

{¶ 38} In Brunson's fifth assignment of error, he argues that the trial court abused its discretion when it permitted the admission of hearsay statements pursuant to the coconspirator exception in Evid.R. 801(D)(2)(e). Specifically, he challenges (1) testimony from Detective Carlin regarding jail calls; (2) a text message

identified as coming from Brunson's phone regarding removing a .45 caliber gun from a truck; (3) a statement allegedly made by Brunson on a jail call asking why "Wayne" was not in jail; (4) testimony regarding a letter Thomas allegedly wrote; and (5) testimony regarding Hollins's correspondence to Marcus Williams ("Williams").

{¶ 39} Evid.R. 801(D)(2)(e) provides that "a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy upon independent proof of the conspiracy," if offered against a party, is not hearsay. Further, the proponent of the evidence must establish "(1) the existence of a conspiracy; (2) the defendant's participation in the conspiracy; (3) the declarant's participation in the conspiracy; (4) that the statement was made during the course of the conspiracy; and (5) that the statement was in furtherance of the conspiracy." *State v. Braun*, 8th Dist. Cuyahoga No. 91131, 2009-Ohio-4875, ¶ 108, citing *State v. Milo*, 6 Ohio App.3d 19, 22, 451 N.E.2d 1253 (10th Dist.1982).

{¶ 40} Brunson argues that the aforementioned evidence was improperly admitted because it did not satisfy the requirements of admissibility. While he fails to provide any additional argument in support of this assertion, he appears to be arguing that the aforementioned evidence was improperly admitted because none of the challenged statements were made in furtherance of a conspiracy. After reviewing the record, we disagree.

{¶ 41} A conspiracy does not necessarily end with the commission of a crime, and a statement made by a coconspirator may be admissible under

Evid.R. 801(D)(2)(e) "'if it was made while the conspirators were still concerned with the concealment of their criminal conduct or their identity.'" *State v. Siller*, 8th Dist. Cuyahoga No. 80219, 2003-Ohio-1948, ¶ 28, quoting *State v. Shelton*, 51 Ohio St.2d 68, 364 N.E.2d 1152 (1977), syllabus. All of the challenged evidence concerns written or oral statements made by coconspirators in this case regarding either the underlying incidents or the subsequent investigation and trial.

{¶ 42} Because it appears that the challenged statements were made in furtherance of a conspiracy and otherwise satisfied the requirements of Evid.R. 801(D)(2)(e), the trial court did not abuse its discretion in admitting this evidence. Brunson's fifth assignment of error is overruled.

## VI. Severance

{¶ 43} In Brunson's sixth assignment of error, he argues that the trial court erred in failing to sever the trial of multiple codefendants into separate trials, thus violating Crim.R. 8, 14, and Brunson's right to confront and cross-examine witnesses against him. Brunson argues that the admission of incriminating statements from codefendants violated his constitutional rights pursuant to *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

{¶ 44} Specifically, Brunson points to testimony from Smith regarding the statement she made to police. Smith told the police that she heard about the robbery at Cooley Lounge the night it happened from one of her regular customers at the bar where she worked. Smith also told police that several weeks after the incident, she was at a bar with Brunson, Lake, and Hollins. Brunson argues that had Smith gone

on to testify as to statements that Hollins may have made to her, this would have created a *Bruton* issue for Brunson. Where no such testimony was elicited, however, we cannot conclude that this somehow violated Brunson's constitutional rights.

{¶ 45} Brunson also argues that Lake's testimony presented a *Bruton* issue. Specifically, he argues that the mere threat by the state that it would be able to use Thomas's statement to the police during its direct examination of Lake infringed Brunson's ability to fully cross-examine Lake. The court made clear to the state that it was not permitted to bring up Thomas's statement to the police, and the state did not bring up the statement. This argument asks us to find error in a hypothetical line of questioning that theoretically could have occurred at trial. We decline to do so. Further, beyond the argument addressed in our analysis of his third assignment of error, Brunson does not argue that Lake's actual testimony constituted a violation of his constitutional rights.

{¶ 46} Finally, Brunson argues that the trial court erred in not severing his case pursuant to Crim.R. 8 and 14. Specifically, Brunson argues that joinder prejudiced him here because Sims's counsel discussed Smith's fear in testifying in the case during her cross-examination, his codefendants had conflicting arguments, and Hollins's counsel implicated him and the other codefendants during closing arguments.

{¶ 47} Crim.R. 8(B), referring to joinder of defendants, provides

> Two or more defendants may be charged in the same indictment, information or complaint if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions

constituting an offense or offenses, or in the same course of criminal conduct. Such defendants may be charged in one or more counts together or separately, and all of the defendants need not be charged in each count.

{¶ 48} Crim.R. 14, referring to relief from prejudicial joinder, provides, in relevant part:

If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment, information, or complaint, by such joinder for trial together of indictments, informations or complaints, the court shall order an election or separate trial of counts, grant a severance of defendants, or provide such other relief as justice requires. In ruling on a motion by a defendant for severance, the court shall order the prosecuting attorney to deliver to the court for inspection pursuant to Rule 16(B)(1) any statements or confessions made by the defendants which the state intends to introduce in evidence at the trial.

{¶ 49} Here, Brunson's pretrial motion to sever was denied, and he did not renew the motion. Generally, a trial court's decision regarding severance will not be disturbed absent an abuse of discretion. *State v. Nitsche*, 2016-Ohio-3170, 66 N.E.3d 135, ¶ 90 (8th Dist.), citing *State v. Banks*, 2015-Ohio-5413, 56 N.E.3d 289, ¶ 64 (8th Dist.), citing *State v. Grimes*, 8th Dist. Cuyahoga No. 94827, 2011-Ohio-4406, ¶ 15. Where a defendant fails to renew their motion to sever either at the close of the state's case or the close of all evidence waives all but plain error on appeal. *Nitsche* at ¶ 90, citing *Lyndhurst v. Smith*, 8th Dist. Cuyahoga No. 101019, 2015-Ohio-2512, ¶ 32. We recognize plain error "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Nitsche* at ¶ 90, quoting *Lyndhurst* at ¶ 32. To establish that joinder was so prejudicial as to constitute plain error, a defendant must establish that the error in

joinder affected the outcome of the trial. *State v. Gordon*, 152 Ohio St.3d 528, 2018-Ohio-259, 98 N.E.3d 251, ¶ 26.

{¶ 50} It is well settled that the law favors joinder of defendants and the avoidance of multiple trials because joinder conserves judicial and prosecutorial time, lessens the expenses of multiple trials, diminishes the inconvenience to witnesses, and minimizes the possibility of incongruous results from successive trials before different juries. *State v. Allen*, 5th Dist. Delaware No. 2009-CA-13, 2010-Ohio-4644, ¶ 54, citing *State v. Thomas*, 61 Ohio St.2d 223, 225, 400 N.E.2d 401 (1980). Further, a "'joinder cannot result in prejudice if the evidence of the offenses joined at trial is simple and direct, so that a jury is capable of segregating the proof required for each offense.'" *State v. Harris*, 8th Dist. Cuyahoga No. 104833, 2017-Ohio-2985, ¶ 13, quoting *State v. Lytle*, 10th Dist. Franklin Nos. 15AP-748 and 15AP-754, 2016-Ohio-3532, ¶ 65. Here, although there were multiple codefendants and numerous charges, the evidence against all of the codefendants was simple and direct.

{¶ 51} Further, we are not persuaded by Brunson's argument that he was prejudiced by conflicting arguments made by his codefendants. Brunson points to statements made by Hollins's counsel during closing arguments, in which he suggested that Hollins should not bear legal responsibility for what happened in the same way as "these guys," presumably referring to Hollins's codefendants. Brunson also points out that his trial counsel argued during closing arguments that Lake was likely more involved in the robbery and shooting than he had claimed, while

Hollins's co-counsel argued during closing arguments that Lake was a liar, and said "I don't think he was in that car because I don't think [Hollins] was in that car."

{¶ 52} In some cases, codefendants' defenses may be irreconcilable to the point that severance is required. *State v. Dues*, 2014-Ohio-5276, 24 N.E.3d 751, ¶ 31 (8th Dist.) Mutually antagonistic defenses are not prejudicial per se, however. *Id.*, citing *State v. Daniels*, 92 Ohio App.3d 473, 478, 636 N.E.2d 336 (1st Dist.1993). Here, the statements highlighted by Brunson appear to be two different methods of impeaching the credibility of the state's key witness. While the methods were not identical, they were not mutually antagonistic so as to constitute prejudice, let alone prejudice that amounts to plain error. Therefore, the joinder of defendants here was not plain error. Brunson's sixth assignment of error is overruled.

## VII. Admission of Cell Phone Records

{¶ 53} In his seventh assignment of error, Brunson argues that the trial court abused its discretion by admitting testimony that certain phone records were related to Brunson.

{¶ 54} At trial, the state introduced cell phone records from a phone that it attributed to Brunson, despite being registered to Javier Rico Suave. Brunson argues that because no phone was taken directly from Brunson, he did not provide police with a phone number, and the phone in question was used after Brunson was arrested, the state did not establish that the phone could reasonably be attributed to Brunson.

{¶ 55} Avon police arrested Brunson in November 2016, in connection with an unrelated incident. At the time of his arrest, Brunson was in a hotel room with Hollins. Cleveland Police Detective Aaron Reese ("Detective Reese") testified at trial as to his investigation in the instant case. Upon learning of Brunson's arrest, Detective Reese obtained body camera footage from the arresting officer. Detective Reese testified although Brunson did not have a cell phone on his person when he was arrested, he had asked his arresting officers to give his cellphone to Hollins when he was being arrested. In the video of the arrest, a cellphone is visible on the hotel bed. Detective Reese then obtained a search warrant for Hollins's residence, and he ultimately located what he believed to be Brunson's phone, hidden in a towel in Hollins's bedroom. Detective Reese compared the phone recovered from Hollins's bedroom with the phone visible in the body-camera footage and determined that they were the same phone. He obtained a search warrant for the phone.

{¶ 56} A search of the phone revealed that Hollins, Sims, and Lake were listed as contacts. The phone was connected to Brunson's Facebook page, and the phone had sent text messages to Hollins regarding the incident in this case. In light of the evidence introduced regarding ownership of the phone, we cannot conclude that the trial court's admission of cell phone evidence constituted an abuse of discretion. Brunson's seventh assignment of error is overruled.

## VIII.  Ineffective Assistance of Counsel

{¶ 57} In Brunson's eighth, ninth, and twelfth assignments of error, he argues that he received ineffective assistance of counsel.  In his eighth assignment of error, he argues that he received ineffective assistance of counsel because his trial counsel made a reference to Sims's midtrial guilty plea during his closing arguments.  Specifically, Brunson's counsel made the following statement:

> We ask for you to again consider that there was Garry Lake, Dana, Wayne — and Dwayne or Wayne is no longer here because of a plea. And what was that about?

{¶ 58} Immediately following this statement, the court and counsel discussed the issue during a sidebar.  Subsequently, the court instructed the jury as follows:

> Ladies and gentlemen of the jury, you are to wholly disregard the last statement that was made by [Brunson's counsel] with regard to a codefendant.

Defense counsel then continued with his closing argument.

{¶ 59} In his ninth assignment of error, Brunson argues that he received ineffective assistance of counsel based on what he characterizes as "the utter lack of any coherent defense whatsoever."  In his twelfth assignment of error, he argues that his counsel was ineffective for failing to make any substantive statements in mitigation at Brunson's sentencing hearing.  We will address these assignments of error together.

{¶ 60} To establish ineffective assistance of counsel, a defendant must demonstrate that counsel's performance at trial was seriously flawed and deficient

and fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* at 687-688.

{¶ 61} In deciding a claim of ineffective assistance, reviewing courts indulge a strong presumption that counsel's conduct falls within the range of reasonable professional assistance, and defendants must therefore overcome the presumption that the challenged action might be considered sound trial strategy. *State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989), citing *Strickland*.

{¶ 62} Here, we cannot conclude that Brunson has satisfied both prongs of the *Strickland* test. Trial strategy, and even strategy that includes debatable trial tactics, does not establish ineffective assistance of counsel. *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 101. Further, viewing counsel's reference to Sims's plea in the context of the entirety of his closing argument, it appears possible that counsel intended to imply that Lake and Sims may have both played a greater role in the incident than the state argued. Although it is indeed questionable for defense counsel to bring up a codefendant's guilty plea, our role is not to question whether another strategy may have been more effective. The fact that a strategic decision may appear misguided when viewed in hindsight does not mean that the decision was deficient.

**{¶ 63}** Even if we were to find that counsel's performance was deficient, Brunson's ineffective assistance claim would still fail because he has not shown established that he was prejudiced. We note that "curative instructions have been recognized as an effective means of remedying errors or irregularities that occur during trial." *State v. Williams*, 8th Dist. Cuyahoga No. 94242, 2010-Ohio-5484, ¶ 21, citing *State v. Ghaster*, 8th Dist. Cuyahoga No. 91576, 2009-Ohio-2134, citing *State v. Zuern*, 32 Ohio St.3d 56, 61, 512 N.E.2d 585 (1987). Further, a jury is presumed to follow instructions, including curative instructions, given to it by a trial judge. *Id.*, citing *State v. Henderson* 39 Ohio St.3d 24, 33, 528 N.E.2d 1237 (1988).

**{¶ 64}** Here, the court issued the following jury instruction concerning Sims following his plea agreement midway through trial:

> Members of the jury, I am withdrawing from your consideration the case against Dwayne Sims. That case has been disposed of and is no longer before you for decision.
>
> You are to deliberate in this case only concerning the complaints pending against Nigel Brunson and Anita Hollins. You are not to speculate about why the case against Dwayne Sims has been withdrawn from your consideration, and it is not to influence your verdicts concerning Nigel Brunson and/or Anita Hollins in any way.
>
> Your responsibility is now to decide the charges that remain pending against Nigel Brunson and Anita Hollins based solely on the evidence against him and her.

After Brunson's counsel alluded to the plea agreement in his closing argument, the court issued a curative instruction as described above. We presume that both instructions were effective. Brunson has not established that but for counsel's comment, there is a reasonable probability that the outcome of trial would have been

different. Even without that statement, the state presented significant and compelling evidence in its case against Brunson.

{¶ 65} Brunson also argues that his counsel provided chronically ineffective assistance of counsel throughout every stage of the proceedings, thus failing to be a meaningful adversary to the state's case. In support of this assertion, Brunson points to numerous instances throughout trial, counsel's allegedly ineffective cross-examination of the state's DNA analyst, counsel's failure to object to parts of the state's closing argument, and the failure to object to Sims's counsel's cross-examination of Hollie Smith.

{¶ 66} We reiterate an ineffective assistance of counsel claim is not a vehicle to second-guess the strategic decisions of trial counsel. *State v. Adams*, 103 Ohio St.3d 508, 2004-Ohio-5845, 817 N.E.2d 29, ¶ 31. Indulging the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, we note that there may have been valid — though ultimately unsuccessful — strategic reasons for the complained of conduct. With respect to cross-examination of the state's DNA analyst, in particular, we note that where the state presented compelling DNA evidence that not only placed Brunson at the scene but identified him as one of the perpetrators, trial counsel may have elected to do as little as possible to emphasize that persuasive evidence. Therefore, we cannot conclude that the claimed failure to object or to effectively cross-examine a witness does not constitute deficient performance.

{¶ 67} Finally, Brunson argues that his counsel was constitutionally deficient because they offered no statements in mitigation at Brunson's sentencing hearing. Brunson also argues that his counsel breached attorney-client privilege when it told the court that it had instructed Brunson not to discuss the case with anyone in the probation department.

{¶ 68} "The extent to which counsel presents mitigation evidence at a sentencing hearing is generally a matter of trial strategy." *State v. Tinsley*, 8th Dist. Cuyahoga No. 105551, 2018-Ohio-278, ¶ 17. Although Brunson argues that counsel failed to offer anything substantive in mitigation, the record reflects that counsel urged the court to consider the PSI, and emphasized that Brunson was suffering from mental-health issues at the time of the offense. We cannot conclude that this constitutes deficient performance. Further, while we acknowledge that Brunson's argument is limited to the record, he has not shown a reasonable probability that, had counsel presented additional evidence in mitigation, he would have received a different sentence.

{¶ 69} Because Brunson has not established that his trial counsel's performance was deficient, or that he was prejudiced by that performance, we overrule his eighth, ninth, and twelfth assignments of error.

## IX. Cumulative Error

{¶ 70} In Brunson's tenth assignment of error, he argues that the cumulative effect of multiple errors at trial, even if singularly not sufficient to warrant reversal, together deprived him of a fair trial and denial of due process. Ohio recognizes the

cumulative error doctrine, and the Supreme Court of Ohio has held that a "conviction will be reversed where the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of numerous instances of trial court error does not individually constitute cause of reversal." *State v. Garner*, 74 Ohio St.3d 49, 64, 656 N.E.2d 623 (1995). The cumulative error doctrine is only applicable in cases where there are multiple errors. *Berea v. Timm*, 8th Dist. Cuyahoga No. 107740, 2019-Ohio-2573, ¶ 42, citing *State v. Obermiller*, 8th Dist. Cuyahoga No. 101456, 2019-Ohio-1234, ¶ 52, citing *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 132. Here, the only error that occurred was one instance of improper opinion testimony, addressed in our discussion of Brunson's fourth assignment of error. Therefore, there is no need to consider the cumulative of effect of other claimed errors. Brunson's tenth assignment of error is overruled.

## X. Brunson's Right to Remain Silent

{¶ 71} In Brunson's eleventh assignment of error, he argues that the trial court engaged in sentencing error when it used his right to remain silent against him. Brunson argues that his sentence of life without the possibility of parole, imposed for crimes he committed when he was 19 years old, is contrary to law and constitutes cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution. Brunson points to the following statement made by the court at sentencing:

> You killed her and you have no remorse. That's what I don't understand. You have no remorse. You don't acknowledge what you

did. The PSI, you don't want to talk to them and tell them about anything you did.

{¶ 72} Shortly thereafter, the following exchange took place between defense counsel and the court:

DEFENSE COUNSEL: Judge, the only thing I would indicate and I think the record should reflect that in the PSI where Mr. Brunson had no comment as to the facts of this case, it's because he was under instructions from his lawyers not to discuss the case with the probation officer, that any comments that he had about the case, he should wait until he comes to the courtroom and make those comments in court. Obviously he chose not to talk. But in terms of the PSI, the reason he didn't comment to the probation officer is because I had advised him not to.

THE COURT: That's understood and noted for the record. And so to the extent that you advised him not to speak to the probation officer, I will no longer include that as part of my sentencing basis therefor. But the fact remains that — I'm assuming that you did not tell him not to speak this morning, correct?

DEFENSE COUNSEL: That's correct, your Honor.

THE COURT: To allocute. And he chose nonetheless not to speak this morning, not to allocute, not to acknowledge anything that he had done, not to express any kind of remorse to anyone in this courtroom, particularly the family and friends of Missy Brinker, who he shot very coldly and with consequence. And I should note then for the record as well, Mr. Butler, since you brought it up after the fact and it was included in the trial, it was testified to that Mr. Brunson was laughing when he said, "I finished her."

Brunson argues that this exchange shows that the court explicitly used Brunson's silence as a basis for sentencing. We disagree.

{¶ 73} A defendant has a right to remain silent at sentencing even after a guilty plea, and a court cannot use that silence at sentencing or at trial against him. *Mitchell v. United States*, 526 U.S. 314, 321, 119 S.Ct. 1307, 143 L.Ed.2d 424 (1999).

Penalizing a defendant for exercising their constitutional rights is unconstitutional. *North Carolina v. Pearce*, 395 U.S. 711, 724, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). In affirming a defendant's right to remain silent, the Supreme Court in *Mitchell* noted that "[w]hether silence bears upon the determination of a lack of remorse, or upon acceptance of responsibility [for sentencing purposes] is a separate question." *Mitchell* at 330. Likewise, Ohio courts have consistently held that a defendant's silence at sentencing may not be used against him in fashioning a sentence. *State v. Hodges*, 8th Dist. Cuyahoga No. 101145, 2014-Ohio-4690, ¶ 11, citing *States v. Betts*, 8th Dist. Cuyahoga No. 88607, 2007-Ohio-5533, ¶ 29.

{¶ 74} Lack of remorse, however, is a sentencing factor pursuant to R.C. 2929.12(D)(5). "Thus, even where a defendant does not speak at sentencing, the court's statement that the defendant demonstrated a lack of remorse and an unwillingness to take responsibility, does not demonstrate that a court's sentencing decision is based upon the silence but shows only that the court was considering the statutory sentencing factors." *Hodges* at ¶ 11, citing *State v. Clunen*, 7th Dist. Columbiana No. 12 CO 30, 2013-Ohio-5525, ¶ 21; *State v. Moore*, 11th Dist. Geauga No. 2011-G-3027, 2012-Ohio-3885, ¶ 47.

{¶ 75} Here, the court properly considered Brunson's lack of remorse pursuant to the statutory sentencing factors. The record makes clear that the court was only considering Brunson's lack of allocution at sentencing to the extent that it indicated a lack of genuine remorse pursuant to R.C. 2929.12(D)(5). Further, the record reflects that the trial court considered multiple sentencing factors, including

the fact that Brunson's criminal record created a high risk of recidivism, that the offenses here were committed while Brunson was on postrelease control for other offenses, and that in addition to causing death and physical harm, Brunson caused significant terror and emotional harm to numerous people. Therefore, Brunson's argument that the court used Brunson's silence against him at sentencing is not well taken.

{¶ 76} Brunson also argues that his sentence of life without the possibility of parole was contrary to law and violated the Eighth Amendment's prohibition against cruel and unusual punishment. Pursuant to R.C. 2953.08(G)(2), a reviewing court may increase, reduce, or otherwise modify a felony sentence if it clearly and convincingly finds that either (a) the record does not support certain required statutory findings or (b) the sentence is otherwise contrary to law. A sentence is contrary to law if the court fails to consider the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the sentencing factors set forth in R.C. 2929.12. As discussed above, a review of the record shows that the trial court properly considered the relevant factors in R.C. 2929.12 and the purposes of felony sentencing in R.C. 2929.11. While Brunson repeatedly emphasizes his youth for support that a life sentence constitutes cruel and unusual punishment, Brunson has not provided, nor have we found, support for this assertion in Ohio law. Brunson's eleventh assignment of error is overruled.

{¶ 77} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
RAYMOND C. HEADEN, JUDGE

PATRICIA ANN BLACKMON, P.J., and
ANITA LASTER MAYS, J., CONCUR